United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BENJAMIN POCO AND BIENVENIDA POCO,

    Plaintiffs,

v.

WACHOVIA MORTGAGE CORPORATION,

    Defendants.

No. 11-02269 EDL

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE**

    Plaintiffs Benjamin and Bienvenida Poco filed this action against Defendant Wachovia Mortgage in state court on April 6, 2011, asserting violations of the Truth in Lending Act (TILA), 15 U.S.C.A. § 1635(b), as well as various state laws. Defendant removed the action on May 9, 2011. On May 16, 2011, Defendant filed a motion to dismiss and a motion to strike two paragraphs of Plaintiffs' complaint. Plaintiffs are represented by counsel and opposed the motion to dismiss. Defendant filed a reply. Plaintiffs did not file an opposition to the motion to strike. Because this matter is appropriate for decision without oral argument, the Court vacated the June 21, 2011 hearing. For the reasons stated in this Order, Defendant's motion to dismiss is granted, and the motion to strike is denied as moot.

**Background**

    Plaintiffs allege that they purchased the property at 125 Colon Avenue, San Francisco, California in 1982. Compl. ¶¶ 2, 13, 32. Plaintiffs allege that their primary language is Tagalog. Compl. ¶ 38.

    In 1995, Plaintiffs obtained a mortgage loan from First Franklin Financial Corporation, and in 2003, they deeded the San Francisco property to themselves as community property. See Request

1  for Judicial Notice (RJN) Ex. G, H.[1]  These documents are written in English. Id.

2  In 2003, Plaintiffs obtained a loan for $122,000 from World Savings Bank for an income

3  property in Stockton, California.  RJN Ex. K at ¶ 32.  These documents are written in English.  Id.

4  Plaintiffs allege that they refinanced the San Francisco property in July 2005 with World

5  Savings Bank in the amount of $677,030.61.  Compl. ¶ 33; RJN Ex. I, J (showing that the refinance

6  was in November 2005).  The refinance documents are also in English.  RJN Ex. I, J.  This refinance

7  loan is at issue in this case.

8  Plaintiffs allege that the refinance loan was a 30-year adjustable rate mortgage with an

9  initial interest rate beginning at 6.260% for the first six months and then increasing every year by

10  adding 3.650% to the Current Index.  Compl. ¶ 33.  In conjunction with the loan, Plaintiffs allege

11  that they signed a promissory note secured by a first deed of trust against the San Francisco property.

12  Compl. ¶ 34.  Plaintiffs allege that a subsequent home equity line of credit for $124,000 was issued

13  by Washington Mutual against the San Francisco property.  Compl. ¶ 35.  Plaintiffs allege that

14  World Savings Bank then transferred its interest in the loan to Wachovia.  Compl. ¶ 36.

15  Plaintiffs allege that World Savings Bank did not provide a translator at the time of

16  entering into the loan.  Compl. ¶ 38.  They allege that the terms and responsibilities of the loan were

17  not explained to them.  Compl. ¶ 38.  They allege that the loan was not "in a language that the

18  Plaintiff can readily understand."  Compl. ¶ 102.  Plaintiffs allege that the loan was financed based

19  on Plaintiffs' ability to only pay the initial interest rate and not the adjustable rate.  Compl. ¶ 39.

---

[1] Defendant's Request for Judicial Notice is granted.  On a motion to dismiss, a court normally may not look to matters beyond the complaint without converting the motion into one for summary judgment. See Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104 (1991).  There are two exceptions to this rule: (1) a court may take judicial notice of material which is either submitted as part of the complaint or necessarily relied upon by the complaint; and (2) a court may take judicial notice of matters of public record. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Under Federal Rule of Civil Procedure 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Furthermore, a court "shall take judicial notice if requested by a party and supplied with the necessary information." See Fed. R. Civ. P. 201(d); Mullis v. United States Bank, 828 F.2d 1385, 1388 n. 9 (9th Cir. 1987).  Here, the documents contained in the Request for Judicial Notice are judicially noticeable under Federal Rule of Evidence 201.

1  Plaintiffs allege that they were told at the inception of the loan by a bank representative that the loan
2  could be refinanced in five years to a loan with a more reasonable interest rate.  Compl. ¶ 39.

3  Plaintiffs allege that they are both retired.  Compl. ¶ 40.  Plaintiffs allege that they suffer
4  financial hardship that makes it unreasonable to continue making payments on their mortgage on the
5  San Francisco property.  Compl. ¶ 40.

6  In May 2007, Plaintiffs allege that they applied for a loan modification for the San
7  Francisco property.  Compl. ¶ 41.  Plaintiffs allege that Defendant's representative informed them
8  that they were pre-approved for a loan modification.  Compl. ¶ 41.  Plaintiffs allege that Defendant's
9  representative then allegedly asked to inspect the San Francisco property, which Plaintiffs permitted.
10 Compl. ¶ 41.  Plaintiffs allege that at the end of May 2007, Defendant declined a loan modification.
11 Compl. ¶ 41.

12 In July 2007, Plaintiffs, along with Edwin and Alessandra Poco, obtained a $1.2 million
13 loan for a property in Claremont, California.  RJN Ex. L.  Those documents were written in English.
14 Id.

15 In January 2010, Plaintiffs allege that they reapplied for a loan modification on the San
16 Francisco property by phone.  Compl. ¶ 42.  Plaintiffs allege that they were promised by
17 Defendant's representative over the phone that they qualified for a modification.  Compl. ¶ 42.
18 Plaintiffs allege that a loan modification was not granted.  Compl. ¶¶ 42, 43.

19 Plaintiffs allege that their monthly payments on the San Francisco property are $3,583.00.
20 Compl. ¶ 44.  Plaintiffs allege that they made timely and full mortgage payments from the inception
21 of the loan through 2008.  Compl. ¶ 44.  Plaintiffs allege that a notice of default was recorded in
22 2009.  Compl. ¶ 44.  Defendant states that a notice of default has not been recorded against the San
23 Francisco property, although a notice of default was recorded and later rescinded against the
24 Claremont property.  RJN Ex. M.  Plaintiffs allege that they owe approximately $350,000 more on
25 the mortgage for the San Francisco property than it is worth.  Compl. ¶ 46.

26 **Legal standard**

27 A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to
28 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

3

1  (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  The reviewing court's
2  "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in
3  the light most favorable to the plaintiff."  Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th
4  Cir. 2008).

5     A court need not, however, accept as true the complaint's "legal conclusions."  Iqbal, 129
6  S. Ct. at 1949.  "While legal conclusions can provide the framework of a complaint, they must be
7  supported by factual allegations."  Id. at 1950.  Thus, a reviewing court may begin "by identifying
8  pleadings that, because they are no more than conclusions, are not entitled to the assumption of
9  truth."  Id.

10    Courts must then determine whether the factual allegations in the complaint "plausibly give
11 rise to an entitlement of relief."  Id.  Though the plausibility inquiry "is not akin to a probability
12 requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not
13 permit the court to infer more than the mere possibility of misconduct . . . ."  Id. at 1949 (internal
14 quotation marks omitted) & 1950.  That is to say, plaintiffs must "nudge[] their claims across the
15 line from conceivable to plausible."  Twombly, 550 U.S. at 570.

16    Additionally, a court may "strike from a pleading an insufficient defense or any redundant,
17 immaterial, impertinent, or scandalous matter."  Fed. R. Civ. Pro. 12(f).

18 **Motion to Dismiss**

19 **1.  Federal Preemption**

20    Defendant argues that federal law, in particular the Home Owners Loan Act ("HOLA") and
21 its implementing Office of Thrift Supervision ("OTS") regulations, completely preempt Plaintiffs'
22 claims.  Defendant states that at the time Plaintiffs entered into their loan, in November 2005, World
23 Savings Bank was a federal savings bank regulated by OTS.  RJN Ex. A, C.  World Savings Bank
24 changed its name to Wachovia Mortgage on December 31, 2007, but it remained chartered under the
25 HOLA and overseen by the OTS.  RJN Ex. B, C.  In November 1, 2009, Wachovia Mortgage
26 became a division of Wells Fargo Bank and is now known as Wachovia Mortgage, a division of
27 Wells Fargo Bank.  RJN Ex. D, E.  HOLA applies even though Wachovia Mortgage is no longer a
28 federal savings bank. See DeLeon v. Wells Fargo Bank, 729 F. Supp. 2d 1119 (N.D. Cal. June 9,

4

2010) ("Wells Fargo notes that at the time the loan was made to the DeLeons, "World Savings Bank, FSB was a federally chartered savings bank organized and operating under HOLA" and observes correctly that the same preemption analysis would apply to any alleged conduct after November 1, 2009, when the lender merged into a national banking association.").

Defendant relies on 12 C.F.R. section 560.2 in support of its argument that the OTS regulations make clear that state laws do not apply to the lending practices of federal banks and thrifts. That regulation provides:

> Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. §§1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part.

12 C.F.R. § 560.2(a). The types of state laws that are preempted by this section include, without limitation, state laws purporting to impose requirements regarding for example: "The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan," "[l]oan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees," "Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants" and "Processing, origination, servicing, sale or purchase of, or investment or participation in,

5

mortgages." Id. § 560.2(b).

Paragraph c of section 560.2, in turn, states: "State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section: (1) Contract and commercial law; (2) Real property law; . . . (4) Tort law; (5) Criminal law; and (6) Any other law that OTS, upon review, finds: (i) Furthers a vital state interest; and (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section."[2]

OTS has interpreted that regulation as follows:

> When confronted with interpretive questions under § 560.2, we anticipate that courts will, in accordance with well established principles of regulatory construction, look to the regulatory history of § 560.2 for guidance. In this regard, OTS wishes to make clear that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations. When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

61 Fed. Reg. 50951, 50966-50967 (Sept. 30, 1996); Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1005 (9th Cir. 2008) (setting forth two step analysis) (quoting 61 Fed. Reg. 50951, 50966-67).

HOLA and its agency regulations have been described as a "radical and comprehensive response to

---

[2] OTS has stated "that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations." 61 Fed. Reg. 50951, 50966-50967. "When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption." Id.

the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." Silvas, 514 F.3d at 1004-05 (quoting Conference of Fed. Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256, 1257, 1260 (9th Cir.1979), aff'd, 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754).

Defendant argues that Plaintiffs' state law claims are preempted because they are based entirely on the origination of Plaintiffs' mortgage loan and to a lesser extent, Wells Fargo's subsequent servicing of the loan. See Stefan v. Wachovia, World Savings, 2009 U.S. Dist. LEXIS 113480, *8-9 (N.D. Cal. Dec. 7, 2009) (finding that state law claims for abuse of process, fraud, interference with prospective economic advantage, negligence, embezzlement and breach of contract were preempted by HOLA, stating: "Plaintiff's claims of misconduct surrounding the foreclosure proceedings clearly fall under the preemption provisions for 'processing, origination, sale or purchase of ... mortgages' and 'disclosure,' while his claim that the loan agreement terms were unconscionable falls under the 'terms of credit' preemption."); Curcio v. Wachovia Mortgage Corp., 2009 U.S. Dist. LEXIS 96155, *17-18 (C.D. Cal. Oct. 14, 2009) (holding that HOLA preempted state law claims similar to those in this case stating: "In short, each state cause of action is premised upon allegations regarding Defendant's lending obligations, including: terms of credit, 12 C.F.R. § 560.2(b)(4); disclosure, Id. § 560.2(b)(9); and processing, origination, and servicing of mortgages, Id. § 560.2(b)(10)."). Plaintiffs's opposition does not contain any discussion or argument about HOLA preemption.

Here, as described more fully below, all of Plaintiffs' state law claims are based upon some combination of their allegations that: (1) Defendant did not provide them with proper TILA loan disclosures, including a translator (Compl. ¶ 52); (2) Defendant assured Plaintiffs that they qualified for the loan and the risks of the loan were not clearly communicated to Plaintiffs (Compl. ¶¶ 50, 65, 74, 92); (3) the loan transaction was unlawful because Defendant made misrepresentations that, among other things, Defendant was a mortgage expert that could be trusted, Plaintiffs' home value would continue to rise and Plaintiffs would be able to refinance, and Defendant would have a negotiator review their file (Compl. ¶ 57); (4) Defendant failed to apply Plaintiffs' extra payments to interest that was not owed by Plaintiffs (Compl. ¶¶ 70, 79); (5) Plaintiffs have defaulted on their

7

loan, and they just want a modification (Compl. ¶¶ 42-45); and (6) Defendant has refused to modify Plaintiffs' loan payments, but Plaintiff is still willing to participate in loan modification (Compl. ¶¶ 42-45). As in Curcio, all of Plaintiffs' state law claims are premised on allegations regarding Defendant's lending obligations as described in section 560.2(b)(4), (5), (9), and (10). Because the state laws on which Plaintiffs rely, as applied, would regulate lending activities expressly contemplated by section 560.2(b), the claims are preempted.

Plaintiffs' second claim under section 17200 alleges that Defendant made numerous misleading statements in an effort to induce Plaintiffs to enter into the loan. Compl. ¶ 57. Plaintiffs also allege that Defendant's wrongful practices of granting subprime loans to unqualified borrowers violated section 17200, and that because Plaintiffs were not qualified, they were induced by Defendant to enter the loans. Compl. ¶ 58. This claim fits within section 560.2(b)(9) because the alleged misrepresentation is contained in advertising and disclosure documents. This claim also fits under 12 C.F.R. section 560.2(b)(4), which covers claims pertaining to a loan's "terms of credit, including . . . adjustments to the interest rate, balance, payments due," and section 560.2(b)(10) insofar as consideration of a request for loan modification is a part of the "processing [or] servicing" of the loan. Thus, Plaintiffs' second claim is preempted.

Plaintiffs' third claim for breach of fiduciary duty alleges that Defendant owed Plaintiffs a duty of care, which was breached by the mortgage broker through the wrongful behavior of selling Plaintiffs a loan for which they were not qualified. Compl. ¶ 63. Plaintiffs allege that the breach of the duty included, among other things, fraudulently enticing Plaintiffs to accept the loan, using lower underwriting standards without consideration of Plaintiffs' ability to pay, and having a general policy of pushing high risk loans. Compl. ¶ 65. This claim fits within 12 C.F.R. section 560.2(b)(4) having to do with terms of credit, and section 560.2(b)(10), which has to do with origination and loan processing. Therefore, Plaintiff's third claim is preempted.

Plaintiffs' fourth claim for breach of implied covenant of good faith and fair dealing alleges that Defendant was required to apply Plaintiffs' extra payments to the principal of the loan, but it did not do so in violation of the covenant of good faith and fair dealing. Compl. ¶ 70. Plaintiffs also allege that Defendant interfered with Plaintiffs' rights to receive promised benefits under the

8

contracts by refusing to refinance and charging unconscionable monthly payments that Defendant knew Plaintiffs could not pay. Compl. ¶ 70. This claim fits within 12 C.F.R. section 560.2(b)(5), which pertains to "loan-related fees [and] charges," section 560.2(b)(10), which pertains to "processing [and] servicing" of the loan, and section 560.2(b)(4), to the extent that fees and charges were authorized by the loan's "terms of credit." Plaintiff's fourth claim is preempted.

Plaintiff's fifth claim for breach of loan contracts alleges that Plaintiffs were fraudulently induced into unduly risky loans and that Defendant knew that brokers made misrepresentations to Plaintiffs that Plaintiffs relied on in accepting the loan. Compl. ¶¶ 73, 75. Plaintiffs allege that Defendant failed to perform on their promises, including a promise that Plaintiffs were qualified for the loan and could afford the payments, and that Plaintiffs could refinance if payments became unaffordable. Compl. ¶ 77. Plaintiffs allege that Defendant failed to accurately credit payments to Plaintiffs' accounts. Compl. ¶ 78. Plaintiffs also allege that Defendant violated the loan contract by applying extra payments to interest that were not legitimately owed by Plaintiffs. Compl. ¶ 79. The allegations about improperly crediting payments and charging excessive fees fit under section 560.2(b)(4) to the extent that the fees were authorized by the loan's "terms of credit," under section 560.2(b)(5) pertaining to "loan-related fees and charges," and section 560.2(b)(10) pertaining to the processing or servicing of the loan. Thus, Plaintiffs' fifth claim is preempted.

Plaintiffs' sixth claim alleges a violation of Civil Code section 2923.5, which requires, before a notice of default may be filed, that a lender contact the borrower in person or by phone to "assess" the borrower's financial situation and "explore" options to prevent foreclosure. This claim fits within 12 C.F.R. section 560.2(b)(4), which encompasses claims based on a loan's "terms of credit . . . including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan." In <u>Nguyen v. Wells Fargo Bank</u>, 2010 U.S. Dist. LEXIS 113246, *28-29 (N.D. Cal. Oct. 25, 2010), this Court stated that: "several federal district courts have concluded that section 2923.5 is preempted because the state law deals with contacting the borrower and requires a specific declaration in the Notice of Default such that it falls 'squarely within the scope of HOLA's Section 560.2(b)(10), which deals with the '[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.'" Thus,

9

Plaintiffs' sixth claim is preempted.

Plaintiffs' seventh claim is for violation of California Financial Code sections 4970-4979.8, which impose limits on lenders. See, e.g., Cal. Fin. Code § 4973 (stating among other things that "A covered loan shall not include a prepayment fee or penalty after the first 36 months after the date of consummation of the loan."). Plaintiffs allege that Defendant violated this statute by steering Plaintiffs to accept an unduly risky loan. Compl. ¶ 92. Plaintiffs allege that Defendant induced Plaintiffs to accept a sub-prime loan when they could have qualified for a prime loan. Compl. ¶ 93. This claim of predatory lending is preempted under section 560.2(b)(4) pertaining to "terms of credit," (b)(5) pertaining to loan-related fees or charges, and section 560.2(b)(10) pertaining to processing and servicing of loans.

Plaintiffs' eighth claim is for violation of California Civil Code section 1632, which provides that any person engaged in a trade or business who negotiates in Tagalog, among other languages, must provide a translation of loan documents into that language. Although section 1632 does not specifically regulate the lending industry, assuming it were applicable here (which Plaintiff's complaint does not show), it would impose requirements on lenders regarding disclosures, and doubts are resolved in favor of preemption. This claim is covered by section 560.2(b)(4) pertaining to the terms of credit, and section 560.2(b)(10) pertaining to origination and processing of loans. Plaintiffs' eighth claim is preempted.

Accordingly, Plaintiffs' state law claims are dismissed with prejudice because they are preempted by HOLA.

**2.    Failure to state a claim**

Defendant also moves to dismiss all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have failed to state a claim. Because all of Plaintiffs' state law claims are preempted, the Court need not reach the issue of whether Plaintiffs have failed to state those claims. The only remaining claim, for violation of TILA, is time-barred and therefore fails to state a claim.

With respect to their TILA claim, Plaintiffs allege that they were given assurances that they qualified for the refinance loan, but the risks of the loan were not clearly communicated to them.

10

Compl. ¶ 50. Plaintiffs argue that they were confused and misled. Compl. ¶ 50. Plaintiffs allege that Defendant failed to provide a translator in Plaintiffs' native language, Tagalog. Compl. ¶ 52. Plaintiffs allege that Defendant did not provide appropriate disclosure in a substantive and technical manner. Compl. ¶ 52. Plaintiffs allege that they reasonably relied on Defendant's statements. Compl. ¶¶ 53-54.

The statute of limitations for a TILA claim is one year for a damages claim and three years for a rescission claim. See 15 U.S.C. § 1635(f), 1640(e). Here, Plaintiffs' loan closed in November 2005, but Plaintiffs did not bring this action until April 2011, beyond even the longest limitations period.

"Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.' " O'Donnell v. Vencor, Inc., 465 F.3d 1063, 1068 (9th Cir.2006) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." Id.; see also Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir.1999) ("Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant ...").

Even construing the complaint liberally, Plaintiffs failed to allege sufficient facts demonstrating entitlement to equitable tolling. Even assuming that Defendant's acts violated TILA, Plaintiffs had the information they needed to discover and bring an action regarding the alleged wrongs more than three years before filing suit. See Meyer v. Ameriquest Mortgage Co., 342 F.3d 899, 902 (9th Cir. 2003) ("The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed."). Nothing in the complaint suggests that Plaintiffs were prevented from comparing their loan documents and disclosures with TILA statutory and regulatory

11

requirements.  See Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir.1996) (determining that the plaintiff's TILA claims based on the failure to make disclosures was time-barred: "Hubbard argues the statute of limitations should have been tolled until she discovered 'there were possible 'anomalies' or errors in her loan.' However, nothing prevented Hubbard from comparing the loan contract, Fidelity's initial disclosures, and TILA's statutory and regulatory requirements.").  Nor did Plaintiffs plead any facts demonstrating that equitable tolling is warranted under the circumstances, such as "facts showing that [they] actively pursued [their] judicial remedies by filing a defective pleading during the statutory period, was induced or tricked by defendants' misconduct into allowing the filing deadline to pass, or was unable to obtain vital information bearing on the existence of his TILA claim, despite all due diligence." Rosal v. First Fed. Bank of Cal., 671 F. Supp. 2d 1111, 1123 (N.D. Cal. 2009).

Thus, Plaintiff's TILA claim is time-barred.  Defendant's motion to dismiss Plaintiffs' TILA claim is granted without leave to amend.

**Conclusion**

Defendant's motion to dismiss is granted without leave to amend.  Because Defendant's motion to dismiss is granted without leave to amend, Defendant's motion to strike is denied as moot.

**IT IS SO ORDERED.**

Dated: June 28, 2011

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge